IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NORFOLK TRANSMISSION & MUFFLER SERVICE, INC., <br><br> Plaintiff, <br><br> v. <br><br> OWNERS INSURANCE COMPANY, <br><br> Defendant. | 8:16CV489 <br><br> MEMORANDUM AND ORDER |

This matter is before the Court on defendant Owners Insurance Company's ("Owners") Motion for Summary Judgment (Filing No. 96). *See* Fed. R. Civ. P. 56. With jurisdiction under 28 U.S.C. § 1332, the Court grants the motion in part and denies it in part.

## I. BACKGROUND[1]

Plaintiff Norfolk Transmission & Muffler Service, Inc. ("Norfolk Transmission") owns a building located at 1001 South 13th Street in Norfolk, Nebraska (the "building"). The building has a flat roof made of Ethylene Propylene Diene Monomer rubber membrane with three parapets ("EPDM roofing system").

Owners issued an insurance policy (the "policy") to Norfolk Transmission effective from January 27, 2014, to January 27, 2015. Norfolk Transmission elected to purchase an optional replacement-cost coverage.

---

[1] Except where noted, these facts are undisputed and are taken from the parties' respective statements of facts and admissions or from documents whose authenticity is undisputed.

On June 3, 2014, a hailstorm struck the Norfolk area. On June 27, 2014, Gary Murren of Western Roofing inspected the EPDM roofing system and patched tears in the membrane he identified as arising from the hailstorm.

On July 2, 2014, Owners's retained independent adjuster, Chris Bilbrey ("Bilbrey"), inspected the building and issued an estimate totaling $27,425.28.[2] The estimate included the roof repairs already completed by Western Roofing on or about June 27, 2014, some repairs to the HVAC units, and repairs to an awning. Bilbrey did not identify any tears in the EPDM roofing system other than those already repaired by Western Roofing. Norfolk Transmission was apparently unsatisfied by this estimate, and a succession of subsequent building inspections began.

On April 23, 2015, and June 11, 2015, another one of Owners's retained independent adjusters, Leland Becher ("Becher") of Midlands Claims Services, inspected the roof and exterior of the building. Becher also did not find any tears in the EPDM roofing system other than those already repaired by Western Roofing.[3] Becher recommended Owners not offer any additional payments, with the exception of $491.50 to repair some damage to the building's glass blocks.[4]

On June 24, 2015, Owners's retained engineer, Kevin Reiser ("Reiser") of Donan Engineering, inspected the roof and exterior of the building. Reiser issued a report dated June 1, 2015, that did not identify any additional tears to the flat surface of the EPDM roofing system other than those already repaired by Western Roofing. Reiser did find

---

[2]On July 31, 2014, Owners issued a payment to Norfolk of $21,892.57. The parties have not explained the reason for the disparity.

[3]Implicitly admitting Bilbrey and Becher did not find additional tears, Norfolk Transmission argues the reason Bilbrey and Becher did not locate additional tears is because they performed inadequate investigations.

[4]It is unclear if Norfolk Transmission received that payment.

2

tears and splits to the membrane on the parapets, but he believed those were caused by "shrinkage" and not the hailstorm, a conclusion that Norfolk Transmission disputes.

Norfolk Transmission retained its own engineer, Greg Kaszas ("Kaszas") of GRK Engineering, Inc., to inspect the EPDM roofing system. After examinations on June 30, 2016, and August 29, 2017, Kaszas concluded existing hail damage required replacement of the EPDM roofing system. Kaszas also identified additional hail damage to awnings, signs, brick veneer, and glass blocks that he believed to be related to the hailstorm.

Norfolk Transmission retained an expert witness, Max Bray ("Bray"), to conduct a pricing evaluation and inspection of the building. He visited the building on July 1, 2016, and August 29, 2017. Bray concluded the replacement cost of the EPDM roofing system totaled $245,773.04, and the replacement cost of the interior deck below the roof to be $267,200.64.[5]

On October 10, 2016, Norfolk Transmission sent a demand letter to Owners containing Kaszas's recommendation that the roof "be removed and replaced" and the replacement cost estimate totaling $245,773.04. Owners denied further liability.

## II.   DISCUSSION

"If there is 'no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate.'" *Sieden v. Chipotle Mexican Grill, Inc.*, 846 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Shrable v. Eaton Corp.*, 695 F.3d 768, 770-71 (8th Cir. 2012)). In reviewing a motion for summary judgment, the Court will view "all facts and mak[e] all reasonable inferences favorable to the nonmovant." *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.,* 703 F.3d 1104, 1107 (8th Cir. 2013).

---

[5] Norfolk Transmission claims water has leaked into the building due to the damaged roof and caused interior water damage.

### A. Bad-Faith Denial

"To establish a claim for bad faith, a plaintiff must show an absence of a reasonable basis for denying the benefits of the insurance policy and the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Williams v. Allstate Indem. Co.*, 669 N.W.2d 455, 460 (Neb. 2003). Proving bad faith requires a showing of intent. *LeRette v. Am. Med. Sec., Inc.*, 705 N.W.2d 41, 49 (Neb. 2005). "Whether a claim is subject to a reasonable dispute is appropriately decided by the court as a matter of law." *Williams*, 669 N.W. 3d at 460.

The Court "must first determine whether, at the time of each denial, [Owners] had an arguable basis on which to deny the claim" because "[i]f [Owners] had such a basis, [Norfolk Transmission]'s bad faith cause of action fails as a matter of law regardless of the manner in which an investigation was or was not conducted." *Radecki v. Mutual of Omaha Ins. Co.*, 583 N.W.2d 320, 326 (Neb. 1998).

Owners based its first estimate on the inspection done by Bilbrey, its independent adjuster. Another independent adjuster, Becher, later corroborated the first estimate. Reiser, Owners's retained engineer, agreed with the independent adjusters' damage findings. Even though Norfolk Transmission has presented conflicting evidence, "[Owners] was allowed to rely in good faith on its own experts' opinions rather than the opinion of the insured's expert[s]." *LeRette*, 705 N.W. 2d at 50.

The investigations and conclusions of Bilbrey, Becher, and Reiser provided a good-faith basis for Owners's handling of Norfolk Transmission's claim. "[A]n insurance company has a right to debate a claim that is 'fairly debatable,' or subject to a reasonable dispute, without being subject to a bad faith claim." *Williams*, 669 N.W.2d at 460. Because "reasonable minds could not differ that [Owners] had an arguable basis on which to deny the claim, . . . there was no bad faith as a result of its [denial] as a matter of law." *Radecki*, 583 N.W.2d at 327.

B.     **Breach of Contract**

Owners's sole argument for summary judgment on the breach-of-contract claim is that Norfolk Transmission must actually repair or replace the roof before Owners owes it any additional payment based on Norfolk Transmission's purchase of optional replacement-cost coverage. This interpretation of the policy is incorrect.

In *D & S Realty, Inc. v. Markel Ins. Co.*, 816 N.W.2d 1 (Neb. 2012), the Nebraska Supreme Court interpreted an insurance policy containing optional replacement-cost coverage language virtually identical to the policy in this case. The Nebraska Supreme Court began by explaining the concept of replacement-cost coverage:

> Replacement cost insurance is optional additional coverage that may be purchased to insure against the hazard that the improvements will cost more than the actual cash value and that the insured cannot afford to pay the difference. In essence, replacement cost coverage insures against the expected depreciation of the property. Unlike standard indemnity, replacement cost coverage places the insured in a better position than he or she was in before the loss. . . . But because replacement cost coverage places the insured in a better position than before the loss, there is a moral hazard that the insured will intentionally destroy the insured property in order to gain from the loss. For this reason, most replacement cost policies require actual repair or replacement of the damaged property as a condition precedent to recovery under the replacement cost rider.

*Id.* at 11-12 (footnotes and citations omitted). Owners is correct that Norfolk Transmission normally must repair or replace the EPDM roofing system before it can receive the full replacement cost. However, if the damages are covered by the policy, Norfolk Transmission is entitled "to an immediate payment representing the actual cash value of the loss, which can be used as seed money to start the repairs" and "the acceptance of this actual-cash-value payment may trigger a more limited time constraint for completion of the repairs, as it does here." *Id.* at 12.

Another exception to the normal functioning of the replacement-cost language may apply here. When the insurer breaches the insurance contract by denying liability for

5

a covered loss, "such denial may excuse the insured's duty under the repair/replace condition to replacement cost coverage." *Id*. at 13. This applies even when the insurer's refusal to pay is done in good faith. *Id*. at 13-14.[6]

If Owners ultimately prevails on its breach-of-contract claim, the remedy would likely be "a judgment to [Owners] for actual cash value and, in addition, a declaratory judgment that [Owners] will be reimbursed for the difference between actual cash value and any repair/replacement costs actually conducted within [180 days], running from the time of the judgment." *Id*. at 19.

Owners's and Norfolk Transmission's experts disagree as to the nature and extent of the damage from the hailstorm. Thus, there are genuine disputes of material fact that preclude the Court from determining whether Owners's refusal to pay Norfolk Transmission's request under the policy constitutes a breach of contract.

### III. CONCLUSION

Norfolk Transmission has failed to show Owners lacked a reasonable basis for denying benefits, and the Court will dismiss its claim for bad faith. There exist genuine disputes of material fact as to whether Owners breached the policy by denying benefits. Accordingly,

   IT IS ORDERED:
   1. Defendant Owners Insurance Company Motion for Summary Judgment (Filing No. 96) is granted in part and denied in part.
   2. Count II of plaintiff Norfolk Transmission & Muffler Service, Inc.'s Amended Complaint (Filing No. 7) is dismissed.

Dated this 6th day of August, 2018.

---

[6]There appear to be genuine issues of fact regarding the applicability of the exceptions, which preclude summary judgment at this time.

7

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge